UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JANE DOE (K.H.),<br><br>　　Plaintiff,<br><br>v.<br><br>R-ROOF VI LLC d/b/a RED ROOF INN, et al.,<br><br>　　Defendants. | Case No. 23-cv-11422<br><br>Honorable Robert J. White |

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT**

I.　Introduction

　　K.H. commenced this action against Red Roof Inns, Inc., the company's affiliated entities, and a third-party franchisee under the Trafficking Victims Protection Reauthorization Act.  The amended complaint alleges that defendants either perpetrated an act of sex trafficking against her or knowingly benefitted from their participation in a venture that engaged in sex trafficking.

　　Before the Court are defendants' separate motions to dismiss the amended complaint. (ECF Nos. 16-18).  K.H. responded in opposition. (ECF Nos. 20-22).  Defendants filed their replies. (ECF Nos. 23-25).  The Court will decide the motions

without oral argument pursuant to E.D. Mich. LR 7.1(f)(2).  For the following reasons, the motions to dismiss the amended complaint are granted with prejudice.

II.  Background

    A.  *Factual History*

K.H. was sex trafficked at various Red Roof Inn hotels located in Michigan between January 2011 and October 2013. (ECF No. 12, PageID.152-55, ¶¶ 20, 26-27, 34, 40).  The amended complaint alleges that K.H. was trafficked at three Red Roof Inns specifically – the Miller Road location in Flint and the State Street and Plymouth Road locations in Ann Arbor. (*Id.*, PageID.153-56, ¶¶ 26-44).  Red Roof Inns, Inc. structured the ownership and operations of these hotels as follows:

*The Miller Road Location*.  R-Roof VI LLC owned and operated the Miller Road location from January 2011 through November 2, 2011. (*Id.*, PageID.153, ¶ 28).  R-Roof VI is a Red Roof Inn affiliated entity that Red Roof Inns, Inc. controls. (*Id.*).  FMW RRI I LLC owned and operated the Miller Road location from November 3, 2011 through October 2013. (*Id.*, PageID.153-54, ¶ 30).  FMW RRI I is a Red Roof Inn affiliated entity that RRI West Management, LLC controls. (*Id.*).

*The State Street Location*.  Ann Arbor Hospitality LLC owned the State Street location from November through December 2012. (*Id.*, PageID.154, ¶¶ 34, 36).  It operated the hotel alongside Red Roof Inns, Inc. and Red Roof Franchising, LLC. (*Id.*, PageID.154-55, ¶¶ 36, 38).

2

*The Plymouth Road Location.* RRI I LLC owned the Plymouth Road location from November 2012 through May 2013. (*Id.*, PageID.155, ¶¶ 40-41). RRI I is a Red Roof Inn affiliated entity that Red Roof Inns, Inc. controls. (*Id.*, ¶ 41). Red Roof Inns, Inc., RRI West Management, and Red Roof Franchising all operated and managed the hotel. (*Id.*, PageID.155-56, ¶¶ 41-43).

The Court will refer to Red Roof Inns, Inc. as "Red Roof Inn" and Red Roof Franchising, RRI West Management, R-Roof VI, FMW RRI I, and RRI I as the "affiliated entities" from here on in.

K.H. maintains that "obvious signs of her trafficking" were apparent to "multiple employees" at the three hotels, including management-level employees. (*Id.*, PageID.169-70, ¶¶ 77-78). The "obvious signs" of trafficking included:

    a.    The hotel rooms where she was trafficked were often paid for with prepaid cards.

    b.    The hotel rooms where she was trafficked were often booked under a fake name.

    c.    K.H.'s trafficker would book two rooms at a time, one room for him and one for K.H.

    d.    There was heavy foot traffic in and out of K.H.'s room involving men who were not hotel guests. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time, which are signs of sex trafficking that hotel staff observed.

    e.    Other obvious signs of trafficking, consistent with the *modus operandi* of K.H.'s trafficker, which were observed by hotel staff.

(*Id.*, PageID.169-70, ¶ 77).

  B.  *Procedural History*

  K.H. initially filed this lawsuit in Washtenaw County Circuit Court. (ECF No. 1, PageID.10-36). The complaint alleged a single cause of action under the Trafficking Victims Protection Reauthorization Act against the same defendants, except for Red Roof Franchising and RRI West Management. (*Id.*, PageID.31-34, ¶¶ 84-95). Red Roof Inn timely removed the case to the Eastern District of Michigan and moved to dismiss the complaint. (ECF Nos. 1, 3). K.H. amended the complaint in lieu of responding to the motion and named Red Roof Franchising and RRI West Management as additional defendants. (ECF No. 12).

  Red Roof Inn and the affiliated entities now move to dismiss the amended complaint.[1] (ECF Nos. 16-18).

---

[1] Two housekeeping items are in order. *First*, it is unclear whether K.H. ever served process on Ann Arbor Hospitality. Either way, it did not move to dismiss the amended complaint. The Court will address whether the amended complaint states a plausible claim for relief against Ann Arbor Hospitality for completeness' sake. *See Bonny v. Society of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993) ("A court may grant a motion to dismiss even as to non-moving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related."); *see also Loman Dev. Co. v. Daytona Hotel & Motel Suppliers, Inc.*, 817 F.2d 1533, 1537 (11th Cir. 1987). This course of action is appropriate even with respect to non-moving defendants who never appeared in the action. *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742-43 (9th Cir. 2008) ("we have upheld dismissal with prejudice in favor of a party which had not appeared, on the basis of facts presented by other defendants which

III.    Legal Standards

When reviewing a motion to dismiss the complaint for failing to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (cleaned up); *see also* Fed. R. Civ. P. 12(b)(6). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quotation omitted).

IV.    Analysis

　　A.    *Overview of the Trafficking Victims Protection Reauthorization Act*

Sex trafficking is a federal crime. At the time of K.H.'s trafficking, 18 U.S.C. § 1591(a) (2008) provided that:

> (a) Whoever knowingly—
>
> > (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or

---

had appeared."); *see also Lee v. Flint Cmty. Sch.*, No. 22-13134, 2023 U.S. Dist. LEXIS 184816, at *6 (E.D. Mich. Oct. 13, 2023).

　　*Second*, RRI I appeared in this case but never moved to dismiss the amended complaint. This seems to be an oversight because its attorneys are the same ones representing Red Roof Inn and the affiliated entities. (ECF Nos. 5, 13, 28-29). The Court will address whether the amended complaint states a plausible claim for relief against RRI I for completeness' sake as well. *See Bonny*, 3 F.3d at 162; *Loman*, 817 F.2d at 1537.

5

> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

Congress enacted the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA") to afford sex-trafficking victims a civil framework for recovering money damages from their traffickers. The statute initially limited civil liability to those who perpetrated sex trafficking crimes against the victim, *i.e.*, perpetrator liability. 18 U.S.C. § 1595(a) (2003). But Congress amended the TVPRA in 2008 and broadened its scope to authorize the recovery of damages against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act" of criminal sex trafficking, *i.e.*, direct beneficiary liability. 18 U.S.C. § 1595(a) (2008).

To establish perpetrator liability, the victim must plausibly assert that the trafficker knowingly (1) engaged in one of the sex trafficking acts listed in section 1591(a)(1), *or* (2) benefitted from participating in a venture that engaged in one of those acts, and (3) knew or recklessly disregarded that means of force, threats of

force, fraud, coercion, or any combination of such means would be used, (4) to cause the victim to engage in a commercial sex act. *See United States v. Bixler*, No. 21-5194, 2022 U.S. App. LEXIS 2646, at *19 (6th Cir. Jan. 27, 2022); *see also G.G. v. Salesforce.Com, Inc.*, 76 F.4th 544, 552 (7th Cir. 2023); *Doe v. Knight*, 624 F. Supp. 3d 857, 862 (E.D. Mich. 2022).

Although the Sixth Circuit has yet to define the exact contours of direct beneficiary liability, the Seventh Circuit's decision in *G.G. v. Salesforce.Com, Inc.*, 76 F.4th 544 (7th Cir. 2023) provides the clearest guidance. According to that iteration, a sex-trafficking victim must plausibly allege that (1) a venture engaged in an act that violates section 1591(a), (2) the defendant knew or should have known that the venture violated section 1591(a), (3) the defendant participated in that venture, and (4) the defendant knowingly benefited from its participation.[2] *Id.* at 553.

Beneficiary liability may also attach to whoever maintains a vicarious relationship with a person or entity that is directly responsible as a sex trafficking perpetrator or beneficiary under section 1595(a), *i.e.*, indirect beneficiary liability.

---

[2] District courts in the Sixth circuit typically analyze these elements in the following arrangement – the plaintiff must plausibly show that the defendant (1) knowingly benefitted, (2) from participation in a venture, (3) which the defendant knew or should have known has engaged in sex trafficking. *See, e.g., K.O. v. G6 Hosp., LLC*, No. 22-11450, 2024 U.S. Dist. LEXIS 59702, at *19-20 (E.D. Mich. Mar. 31, 2024); *H.G. v. Inter-Continental Hotels Corp.*, 489 F. Supp. 3d 697, 704 (E.D. Mich. 2020). This test is functionally equivalent to one the Seventh Circuit employed in *G.G. See K.O.*, 2024 U.S. Dist. LEXIS 59702, at *20 (commenting that the Seventh Circuit's "mere reorganization of the factors does not lead to a substantially different result").

*See, e.g., J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155, 2020 U.S. Dist. LEXIS 201073, at *21-22 (N.D. Cal. Oct. 28, 2020) (recognizing TVPRA indirect beneficiary liability expressly); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 971-72 (S.D. Ohio 2019) (denying motion to dismiss allegations of TVPRA vicarious liability). To demonstrate TVPRA liability under an indirect beneficiary theory, the victim must plausibly show that (1) a person or entity is a perpetrator or direct beneficiary of sex trafficking under section 1595(a), and (2) some form of vicarious relationship exists between the perpetrator or direct beneficiary and the defendant. *See, e.g., J.L. v. Best Western Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064-65 (D. Colo. 2021).

In all these cases, the limitations period for instituting a TVPRA claim is either (1) 10 years after the cause of action arose, or (2) 10 years after the victim reaches 18 years of age (so long as the victim was a minor at the time of the alleged offense), which ever period is longer. 18 U.S.C. § 1595(c).

B.     *Perpetrator Liability*

K.H. asserts that all the defendants are liable as sex trafficking perpetrators. (ECF No. 12, PageID.193-94, ¶ 148). Sex trafficking perpetrators may only fall within two categories: (1) direct violators under section 1591(a)(1), or (2) participants under section 1591(a)(2). *See Acevedo v. Exp. Realty, LLC*, 713 F. Supp. 3d 740, 764-65 (C.D. Cal. 2024). Using either theory, the perpetrator must possess

8

"actual knowledge" of the victim's trafficking. *Acevedo*, 713 F. Supp. 3d at 765; *see also Doe (G.N.C.) v. Uniquest Hosp., LLC*, No. 23-7980, 2024 U.S. Dist. LEXIS 163319, at *9 (S.D.N.Y. Sep. 11, 2024); 18 U.S.C. § 1591(e)(4) (defining "participation in a venture" in section 1591(a)(2) to mean "*knowingly* assisting, supporting, or facilitating a violation of subsection (a)(1).") (emphasis added).

Because the amended complaint does not allege that Red Roof Inn, the affiliated entities, or Ann Arbor Hospitality possessed actual knowledge of K.H.'s trafficking, or plead sufficient facts plausibly raising such an inference, they cannot be held liable as sex trafficking perpetrators under section 1595(a).

C. *Direct Beneficiary Liability*

Turning to the direct beneficiary claims, K.H. alleges that Red Roof Inn, the affiliated entities, and Ann Arbor Hospitality all benefitted directly from sex trafficking. (ECF No. 12, PageID.194-95, ¶¶ 149-52).

To recap, direct beneficiary liability exists when there is (1) a venture engaged in an act that violates section 1591(a), (2) the defendant knew or should have known that the venture violated section 1591(a), (3) the defendant participated in that venture, and (4) the defendant knowingly benefited from its participation. *G.G.*, 76 F.4th at 553. While K.H. plausibly demonstrates the existence of a venture that violated section 1591(a) (the first direct beneficiary prong), the amended complaint fails to show that any of the defendants knew or should have known that the venture

9

violated section 1591(a) (the second direct beneficiary prong). This central defect scuttles all her direct beneficiary claims.

1. A Venture Engaged in an Act that Violates Section 1591(a)

The existence of a qualifying venture presents the most straightforward inquiry. Most federal courts decline to incorporate section 1591's criminal definition of "venture" – as "any group of two or more individuals associated in fact, whether or not a legal entity" – into section 1595(a). 18 U.S.C. § 1591(e); *see also, e.g., G.G.*, 76 F.4th at 554 ("we decline to import Section 1591's definition into Section 1595."); *Doe # 1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021) (same); *M.A*, 425 F. Supp. 3d at 969. They instead adopt the Eleventh Circuit's approach in *Doe # 1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), which defines "venture" as "an undertaking or enterprise involving risk and potential profit." *Id.* at 724 (citing *Venture*, Black's Law Dictionary (11th ed. 2019)); *see also A.H. v. Wynn Las Vegas, LLC*, No. 24-01041, 2024 U.S. Dist. LEXIS 234594, at *12 (D. Nev. Dec. 30, 2024); *Doe (G.N.C.)*, 2024 U.S. Dist. LEXIS 163319, at *6; *Doe v. Piraino*, 688 F. Supp. 3d 635, 649 (M.D. Tenn. 2023).

K.H.'s traffickers ran this type of enterprise. The amended complaint alleges that they advertised her for "commercial sex services" and "used force, manipulation, and coercion to require her to engage in commercial sex services for their financial benefit"; they "controlled all proceeds from the commercial sex work

they forced her to perform"; and they "moved her and other victims between hotels on a rotating basis" to engage in commercial sex acts. (ECF No. 12, PageID.152-53, ¶¶ 21-24). These activities amount to a venture engaged in acts that violated section 1591(a).

### 2. Knowledge That the Venture Engaged in an Act in Violation of Section 1591

The next step in evaluating direct beneficiary liability is to assess whether defendants knew or should have known that the traffickers' venture violated section 1591(a). "This is a negligence standard." *G.G.*, 76 F.4th at 555 n.9. And it requires, at the very least, a plausible showing that defendants constructively knew the traffickers' *venture* engaged in an act that violated section 1591(a).[3] *Id.* (collecting

---

[3] The Court adopts the majority view among federal courts that direct beneficiary claims do not require plausible "allegations . . . that the defendant knew or should have known of the *specific victim* who has brought the civil action." *G.G.*, 76 F.4th at 558 (emphasis added). The plaintiff must only "allege plausibly that the defendant had constructive knowledge that a venture *generally* has violated Section 1591." *Id.* (emphasis in original); *see id.* n.13 (collecting cases).

A minority of federal courts disagree with this approach. For example, the Eleventh Circuit held in *Doe #1* that direct beneficiary liability requires a plausible showing that "the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA *as to the plaintiff*." *Doe #1*, 21 F.4th at 726 (emphasis added); *see also J.L.*, 521 F. Supp. 3d at 1066-67; *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 839-40 (C.D. Cal. 2021).

The Court will follow the majority view, not only because it is more persuasive, *see G.G.*, 76 F.4th at 556-58, but because K.H. cannot prevail even under this broader (and more favorable) interpretation of section 1595(a).

11

cases); *see also Doe # 1*, 21 F.4th at 725 (defining constructive knowledge as that which "one using reasonable care or diligence should have" known).

The amended complaint does not meet this threshold. The pleadings contain expansive topic headings (with corresponding allegations) pertaining to "The Hotel Industry's Role in Sex Trafficking and Defendants' Knowledge of the Problem" (ECF No.12, PageID.156-62, ¶¶ 45-60), "Sex Trafficking Has Long Been Prevalent at [Red Roof Inn] Branded Properties, and Defendants Knew of Should Have Known This" (*Id.*, PageID.162-68, ¶¶ 61-69), as well as "Defendants' Knowledge of Sex Trafficking at the Subject [Red Roof Inns]." (*Id.*, PageID.168-81, ¶¶ 70-118).

But "these allegations do not show that Defendants knew or should have known of sex trafficking *by the particular venture in which they allegedly participated*," *i.e.*, the venture that K.H.'s traffickers operated. *H.G. v. Inter-Continental Hotels Corp.*, 489 F. Supp. 3d 697, 705 (E.D. Mich. 2020) (emphasis in original). Whether defendants "knew or should have known about trafficking by other (or unspecified) ventures in which they are not alleged to have participated" is immaterial to establishing the culpable mental state necessary for direct beneficiary liability. *Id.*; *see also G.G.*, 76 F.4th at 557 (observing that "the civil defendant needed to have constructive knowledge of a non-generalized and non-sporadic – a 'particular' – venture" to plausibly establish direct beneficiary liability); *K.O. v. G6*

*Hosp., LLC*, No. 22-11450, 2024 U.S. Dist. LEXIS 59702, at \*64-66 (E.D. Mich. Mar. 31, 2024) (same).

The specific allegations about K.H.'s trafficking are likewise deficient. Aside from providing a general blueprint of the traffickers' methods, practices, and tactics, the amended complaint contains not a single allegation from which a plausible inference could be drawn that any of the defendants (1) were actually aware of the traffickers in their role as traffickers (as opposed to generic hotel guests), or (2) constructively knew about the traffickers' venture from tell-tale indications of sex trafficking. Especially in this last respect, the "red flags" that K.H. highlights in the amended complaint – that her traffickers paid for hotel rooms with "prepaid cards," that they booked the hotel rooms using aliases, that K.H.'s hotel room attracted "heavy foot traffic" with visitors staying for brief time periods and entering and leaving at unusual hours – are just as consistent with non-sex trafficking activities, such as commercial sex work generally or unlawful drug transactions, as they are with sex trafficking.[4] (ECF No. 12, PageID.169-70, ¶ 77). *See, e.g, Doe v. Wyndham Hotels & Resorts*, No. 23-01676, 2024 U.S. Dist. LEXIS 109090, at \*16-17 (E.D.

---

[4] The "specific" allegations about K.H.'s trafficking also appear in other complaints, involving other trafficking victims from across the country, nearly verbatim. *See, e.g.*, *Doe (G.N.C.) v. Uniquest Hosp., LLC*, No. 23-7980, ECF No. 113 (S.D.N.Y. Jan. 22, 2024); *Doe (S.J.C.) v. Esa P Portfolio LLC*, No. 24-02423, ECF No. 1 (N.D. Ga. Jun. 3, 2024); *Doe v. Scottsdale Inns LLC*, No. 23-00759, ECF No. 1 (D. Ariz. May 3, 2023).

13

Cal. Jun. 20, 2024) (dismissing TVPRA direct beneficiary claim because allegations that traffickers "received extra housekeeping services, that they paid for rooms in cash, and that they did not supply identification for all parties" did not plausibly establish the hotel franchisee's "actual or constructive knowledge that it was renting rooms to people participating in sex trafficking, as opposed to other conduct."); *B.J. v. G6 Hosp., LLC*, No. 22-03765, 2023 U.S. Dist. LEXIS 88180, at *16-18 (N.D. Cal. May 19, 2023) (dismissing TVPRA direct beneficiary claim where "open and obvious signs" of commercial sex trafficking were "equally consistent with criminal conduct other than sex trafficking, *e.g.*, prostitution.").

The amended complaint's allegations fall far short of showing defendants' actual or constructive knowledge of the traffickers' venture, let alone whether that venture violated section 1591(a). A surface comparison to cases where the victim's allegations were detailed enough to plausibly establish direct beneficiary liability illustrates this point. *See, e.g., Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (Souter, J.) (reversing dismissal of a complaint alleging how "in plain daylight view of the front office of the motel" the trafficker grabbed the victim, kicked her, and forced her "back toward the rented quarters when she had tried to escape."); *M.A*, 425 F. Supp. 3d at 967 ("[d]espite her desperate pleas and screams for help, after being beaten or choked at the Defendants' hotel properties, the hotel staff ignored her and did nothing to prevent the ongoing and obvious torture she endured."); *A.R.*

14

*v. Wyndham Hotels & Resorts, Inc.*, No. 21-04935, 2022 U.S. Dist. LEXIS 227436, at *2-3 (S.D. Ohio Dec. 16, 2022) (denying motion to dismiss the complaint where the plaintiff alleged that "unusually large numbers of male guests [asked] for [plaintiff] at the front desk," and "one of [plaintiff's] traffickers regularly request[ed] that hotel staff notify him when [the plaintiff] attempted to leave the hotels.").

For all these reasons, the amended complaint fails to plausibly demonstrate that Red Roof Inn, the affiliated entities, or Ann Arbor Hospitality knew or should have known that K.H.'s traffickers' venture violated section 1591(a). And without plausible allegations establishing this critical element, K.H. cannot prevail on her direct beneficiary claims against any of the defendants, even if she could satisfy all the remaining elements in the cause of action.

### D. *Indirect Beneficiary Liability*

K.H.'s indirect beneficiary claims asserted against Red Roof Inn and the affiliated entities does not fare any better. Insofar as the amended complaint seeks to hold them vicariously liable for Ann Arbor Hospitality's (and its employees') purported malfeasance, the indirect beneficiary claims cannot proceed further because the Court already determined that Ann Arbor Hospitality did not violate the TVPRA as a sex trafficking perpetrator or direct beneficiary, *i.e.*, the first indirect beneficiary prong. *See C.B. v. Red Roof Inns, Inc.*, No. 22-3772, 2024 U.S. Dist. LEXIS 56410, at *26-27 (S.D. Ohio Mar. 28, 2024) (holding that TVPRA indirect

15

beneficiary liability could not apply to hotel franchisors unless the "franchisees themselves . . . committed a wrong to be imputed on Defendants."); *see also J.L. v. Best Western Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064-65 (D. Colo. 2021) (same).

As a result, there is no need to address whether Red Roof Inn, the affiliated entities, and Ann Arbor Hospitality have a vicarious relationship – the second indirect beneficiary prong – because there is no TVPRA liability to impute to either Red Roof Inn or the affiliated entities. The indirect beneficiary claims must, therefore, be dismissed.

E. Remaining Contentions

Two legal questions are still unresolved: (1) when did the limitations period for the TVPRA claims begin to run, and (2) whether the Court should grant K.H. a second chance to amend the complaint. (ECF No. 16, PageID.244-45; ECF No. 17, PageID.260-64; ECF No. 18, PageID.294-95; ECF No. 20, PageID.333).

1. Statute of Limitations

With respect to the limitations period, the Court declines to address this issue since it already determined that K.H. fails to state a plausible claim for relief under the TVPRA. *Courser v. Mich. House of Representatives*, 831 F. App'x 161, 180 (6th Cir. 2020); *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 216 n.6 (6th Cir. 2019). Even were the Court to resolve the statute of limitations question in K.H.'s favor, it

16

would not alter the outcome of this case – that K.H. cannot prevail because her substantive allegations are implausible.

2. Amendment

As for amending the complaint, Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a pleading should be freely given "when justice so requires." That means "the district court must be able to determine whether 'justice so requires,' and in order to do this, the court must have before it the substance of the proposed amendment." *Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc.*, 288 F.3d 895, 906 (6th Cir. 2002) (citation omitted). "[A] bare request in an opposition to a motion to dismiss – without any indication of the particular grounds on which amendment is sought – does not constitute a motion within the contemplation of Rule 15(a)." *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quotation omitted); *see also* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.").

K.H.'s request for leave to amend the complaint a second time fits this description exactly. She cites the notion that "leave to amend should be granted liberally" and asks the Court to "allow her an opportunity to amend" the complaint in the event it "determines that [she] has not pleaded a plausible claim." (ECF No. 20, PageID.333). But nowhere does she propose how she intends to correct the pleading deficiencies identified in the amended complaint.

17

K.H. is not entitled to leave to amend for another reason as well. Leave to amend a complaint may be denied where there is a "repeated failure to cure deficiencies by amendments previously allowed . . . and futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010). K.H. already had an opportunity to amend the complaint as of right and failed to remedy the same deficiencies Red Roof Inn identified in its previous motion to dismiss the complaint. (ECF No. 3, PageID.68, 77-78). Under these circumstances, the Court is justified in "refusing" her "another bite at the apple." *Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 273 (6th Cir. 2018).

Because K.H. "submitted none of th[e] facts to aid the court in deciding whether justice require[s] the court to grant leave to amend," and she is otherwise unable to cure the factual defects in the amended complaint after receiving appropriate notice of them, her request for leave to amend must be denied. *Roskam Baking*, 288 F.3d at 906. Accordingly,

IT IS ORDERED that defendants' motions to dismiss the amended complaint (ECF Nos. 16-18) are granted.

IT IS FURTHER ORDERED that the amended complaint is dismissed with prejudice as to all the named defendants.

Dated: January 14, 2025            s/Robert J. White
                                   Robert J. White
                                   United States District Judge